655 A.2d 1030

**COMMONWEALTH of Pennsylvania**

v.

**Ronald BENTON, Appellant.**

Superior Court of Pennsylvania.

Submitted Nov. 14, 1994.

Filed March 16, 1995.

442

Ronald Benton, pro se.

John M. Morganelli, Dist. Atty., Easton, for Comm.

Before DEL SOLE, BECK and CERCONE, JJ.

BECK, Judge:

In this appeal from the judgments of sentence for possession of cocaine with intent to deliver and conspiracy, we address the conclusions of the suppression court, specifically the propriety of the stop of appellant's vehicle. We conclude that the findings of the suppression court are not supported by the record, that the Commonwealth did not meet its burden of proving that the stop was lawful and that the court's denial of suppression was, therefore, erroneous.

In December of 1992, appellant was a passenger traveling in an automobile which was stopped by Pennsylvania State Trooper Gerard Walsh on Interstate Route 78. The purpose of the stop, as testified to by Walsh, was the presence of an object hanging from the rear view mirror of the car. Walsh described the item, later identified as an air freshener, as a thin object several inches long. Believing the existence of this object to constitute a violation of 75 Pa.C.S.A. § 4524,[1] Walsh signaled for the driver to stop his vehicle and provide identification and registration. Neither the driver nor appellant could produce a valid driver's license or registration. Further,

---

1. Section 4524 prohibits a person from operating a motor vehicle which has an object hanging from the rear view mirror that "materially obstruct[s], obscure[s] or impair[s] the driver's vision through the front windshield" or "constitute[s] a safety hazard." 75 Pa.C.S.A. § 4524(c).

neither man claimed ownership of the car or could identify the car's registered owner. Concluding that he could not permit appellant or the driver to remain in control of the vehicle under these circumstances, Walsh intended to impound the vehicle, issue a warning for traffic violations and transport both appellant and the driver from the highway to a telephone so that they could secure transportation from the scene.

Because he intended to impound the car, Walsh conducted an inventory search in order to identify and safeguard the contents of the vehicle. He also asked for and received permission from the driver to search the car. Upon searching, Walsh found a brown bag containing 289 grams of cocaine under the passenger seat.

Appellant was brought to trial on charges of possession, intent to deliver and conspiracy. Prior to trial, he filed a motion to suppress, alleging that the initial stop of the vehicle was unlawful and the evidence yielded must be suppressed. The suppression court denied the motion and appellant was found guilty of all charges. On appeal, he argues that the suppression court's decision was erroneous.[2] We agree.

When a defendant files a motion to suppress, it is the burden of the Commonwealth to prove, by a preponderance of the evidence, that the challenged evidence is admissible. *Commonwealth v. DeWitt*, 530 Pa. 299, 608 A.2d 1030, 1031 (1992). When reviewing a suppression order in favor of the Commonwealth, we consider the evidence presented by the prosecution and so much of the evidence for the defense as, fairly read in the context of the whole record, remains uncontradicted. *Commonwealth v. Monarch*, 510 Pa. 138, 507 A.2d 74, 78 (1986). Our task is clear; we must determine

---

**2.** Appellant makes numerous other allegations of error including sufficiency of evidence and ineffectiveness of counsel claims. He also argues that Trooper Walsh should not have impounded the vehicle and that an inventory search was unnecessary. While the evidence presented at trial was sufficient to support the convictions under a theory of constructive possession, we need not delve into the actions of Trooper Walsh subsequent to the stop or the other alleged errors committed at trial. Our conclusion that the motion to suppress was improperly denied makes consideration of these other issues moot.

whether the suppression court's factual findings are supported by the record, and whether inferences and legal conclusions drawn from those findings are legitimate. *Commonwealth v. Davis,* 418 Pa.Super. 318, 614 A.2d 291, 292 (1992).

With respect to factual findings, we are mindful that it is the sole province of the suppression court to weigh the credibility of the witnesses. *Commonwealth v. Quiles,* 422 Pa.Super. 153, 619 A.2d 291, 292 (1993). Further, the suppression court judge is entitled to believe all, part or none of the evidence presented. *Commonwealth v. Williams,* 411 Pa.Super. 586, 602 A.2d 350, 353 (1992). However, where the factual determinations made by the suppression court are not supported by the evidence, we may reject those findings. *Commonwealth v. Burnside,* 425 Pa.Super. 425, 625 A.2d 678, 680 (1993). Only factual findings which are supported by the record are binding upon this court.

Appellant's claim concerns the propriety of the initial stop of the vehicle. He argues, essentially, that the stop was pretextual, and that Trooper Walsh did not observe a violation of Section 4524, or even a perceived violation of Section 4524, when he noticed an air freshener hanging from the rear view mirror of the car.

Section 4524 does not prohibit the hanging of an object from a car's rear view mirror but prohibits the hanging only where such object serves to *materially obstruct, obscure* or *impair* a driver's vision. *See* 75 Pa.C.S.A. § 4524 (emphasis added). As the Commonwealth notes in its brief, a police officer who has reasonable and articulable grounds to believe that a vehicle or driver is in violation of the Motor Vehicle Code lawfully may stop the vehicle. 75 Pa.C.S.A. § 6308(b); *Commonwealth v. McElroy,* 428 Pa.Super. 69, 630 A.2d 35, 40–41 (1993). And, as noted by the trial court, an officer need not stop a vehicle only where he or she intends to issue a citation, but can effectuate a stop solely for purposes of issuing the driver a warning. *Commonwealth v. Fisher,* 294 Pa.Super. 486, 440 A.2d 570, 572 (1982).

■ In sum, a traffic stop must be the result of a reasonable belief on the part of the officer that the Vehicle Code is being violated. While an actual violation need not be established, a reasonable basis for the officer's belief is *required to* validate the stop. *See McElroy, supra,* 428 Pa.Super. at 69, 630 A.2d 35.

Following the suppression hearing in this case, the court specifically found that Trooper Walsh's testimony was credible and that he possessed reasonable and articulable grounds to believe a Vehicle Code violation occurred. Suppression Court Op. at 3, 7–8. Despite these findings, the suppression judge noted that the air freshener was not fully described at the hearing and "it [was] not easy to imagine a hanging air freshener which would materially impair a driver's vision." *Id.* at 7. We agree with the suppression court on both these points. With respect to his observations of the vehicle, the direct testimony of Trooper Walsh was as follows:

Q: What was the basis for the stop?

A: As I was traveling westbound on Interstate 78, I approached a '91 Chevrolet Cavalier. I observed there was an object hanging from the rear-view mirror, and at that point, I determined to stop it. . . .

Q: The basis for the stop was something was on the rear-view mirror?

A: That's correct. *That's a violation of the Vehicle Code for having an object or device from that—hanging from the rear-view mirror.*

Suppression Hearing Transcript at 13 (emphasis supplied). On cross-examination, Trooper Walsh was asked how he came to observe the object and to describe its size.

Q: . . . At some point . . . you observed what you considered to be a violation of the Motor Vehicle Code. Right?

A: Yes.

\* \* \* \* \* \*

Q: Well, now this violation you're talking about consisted of an air freshener hanging from the rear view mirror. Didn't it?

A: That's correct.

Q: And that, according to your testimony, that violated section what, 40?

A: 4524.

Q: 4524 of the Motor Vehicle Code. Right?

A: Yes.

Q: And you say that when you were several car lengths behind [the driver] in the left hand lane, you looked into his vehicle and saw an air freshener hanging from the rear view mirror. Is that right?

A: That's correct.

Q: And when you saw it, were you able to identify it as an air freshener?

A: No. *It was an object hanging from the rear view mirror.*

\* \* \* \* \* \*

Q: Now, could you tell, when you first saw it, what size it was, if you know?

A: No.

Q: You couldn't tell what size it was. Could you tell what color it was?

A: No, not at that time.

Q: Could you tell who manufactured the air freshener, what make or model of air freshener?

A: As I stated, I didn't know what it was at first. *I knew it was an object.* I wasn't sure it was an air freshener.

\* \* \* \* \* \*

Q: What size of an air freshener was this, approximately, inch, two inches?

A: Several inches.

Q: Several inches?

A: Uh-huh.

Q: Is this in the form of a tube?

A: A tube?

Q: A tube. Is it tubular?

A: No, sir. It's a flat object.

Q: It's a flat object. How thick is it?

A: I wouldn't know. It's thin. It's thin.

Q: It's a thin object. And when you say several inches, what do you mean by that? You mean—is this rectangular?

A: The exact shapes I couldn't—

Q: You don't know the exact shape. Is that what you're trying—

A: No. *I couldn't describe it.*

Q: You couldn't describe it?

A: That's correct.

Suppression Hearing Transcript at 27–31 (emphasis supplied). At this point the prosecutor objected to the line of questioning, asserting that it did not matter what the size of the object was. The suppression court judge disagreed, stating that he understood the point of the questions to be that it was appellant's position that the car was stopped for a "trumped up reason." The cross examination continued:

Q: ... Now did you conclude, from looking at this object, Trooper, that [the driver] had violated Section 4524? Did you conclude when you saw the object—

A: Yes.

Q: —out of the rear-view window that he had committed the violation of 4524?

A: *It's a violation to hang objects.*

Suppression Transcript at 32–33 (emphasis supplied).

 After a thorough review of all the testimony on this issue, we disagree with the suppression court that Trooper Walsh possessed reasonable and articulable grounds to believe a violation of the Motor Vehicle Code occurred. There was no testimony whatsoever that the object materially obstructed, obscured or impaired the driver's vision, or appeared to do so, nor did the court hear how the item constituted or appeared to constitute a safety hazard. As a result, the finding of the suppression court that Trooper Walsh reasonably believed a violation existed is not supported by the evidence.

Because the suppression court's finding is not supported by the evidence, its legal conclusion based on that finding, namely, that the stop was lawful, was erroneous.

The court's finding that Trooper Walsh was credible does not alter our conclusion. A close reading of Walsh's testimony leads to the conclusion that the trooper believed that *all* objects hanging from a rear view mirror constitute violations of § 4524. (See emphasized portions of testimony excerpted above.) The plain language of the statute establishes otherwise, however, and makes unlawful only those items which materially obstruct, obscure or impair a driver's vision. Though credible, Walsh's testimony simply did not set out reasonable and articulable grounds for believing a Section 4524 violation occurred. *See McElroy, supra* at 77–79, 630 A.2d at 40 (in determining the validity of a traffic stop, the question is whether the officer's testimony amounts to reasonable and articulable grounds to suspect a violation of the Vehicle Code).

An officer may not make a traffic stop based on improper reasons. We recognize that in making traffic stops the police act to keep the highways safe and minimize accidents on the roads. However, in carrying out this important function an officer does not have unfettered discretion to stop cars for further investigation. He cannot use pretexual reasons for the stop. The law does not permit an officer to stop a vehicle based on reasons other than the officer's reasonable belief that a violation of the Motor Vehicle Code has occurred. In the instant case, the record does not support the conclusion that the officer had a reasonable belief that the Motor Vehicle Code was being violated. *See McElroy, supra,* 428 Pa.Super. at 69, 630 A.2d 35. The stop was unlawful and therefore the evidence flowing from it should have been suppressed.

Judgments of sentence vacated. Matter remanded for proceedings consistent with this opinion; jurisdiction relinquished.