## Commonwealth v. Silfies

C.P. of Monroe County, no. 1034 Criminal 1995.

*Curtis Rogers,* for the Commonwealth.
*George Royle,* for defendant.

WALLACH MILLER, *J.,* May 1, 1996—Presently before the court for disposition is defendant's motion to suppress evidence discovered in his vehicle during the course of a traffic stop conducted by a member of the Pennsylvania State Police. Defendant alleges that the events leading up to the discovery of the contraband constitute a violation of his constitutional right against unlawful searches and seizures. The Commonwealth contends that the discovery of the contraband was the result of a lawful traffic stop of defendant, coupled with his valid consent. Based on the testimony presented at the suppression hearing, the facts of this case as determined by the court are set forth as follows.

On March 21, 1995, at approximately 6 p.m., defendant and his passenger, Michael Campbell, were traveling south on Route 115 in Chestnuthill Township, Monroe County. Defendant's car had a large car engine tied down in the trunk which the two young, white men were bringing from Dushore, Sullivan County, Pennsylvania to Monroe County.

Trooper Shawn Meenan of the Pennsylvania State Police was inside a gas station "some distance" from the road when he first observed defendant and his heavy load. From this vantage point, Trooper Meenan determined that the rear bumper of defendant's vehicle was less than 16 to 20 inches from the ground. Additionally, while not contained in the criminal complaint and probable cause affidavit he prepared, Trooper

Meenan testified at the suppression hearing that defendant's vehicle did not have a full view through the rear window. Believing these to be violations of the Pennsylvania Motor Vehicle Code, Trooper Meenan ran out of the station, got in his car, followed the defendant about a mile, and initiated a traffic stop.

Upon approaching defendant's vehicle, Trooper Meenan requested that defendant provide him with his license and registration, and then exit the vehicle. Defendant complied. Trooper Meenan testified that he had stopped the long-haired defendant at least twice before and did not know him to be dangerous or in possession of a weapon. Nonetheless, Trooper Meenan conducted a patdown search of defendant "for his [the trooper's] safety." The search did not yield a weapon, nor did it yield contraband.

After defendant's credentials were checked and found to be proper, Trooper Meenan issued an oral warning for the alleged Vehicle Code violations. During this exchange, Trooper Meenan noted that defendant's eyes were red and glassy.[1] Again, although it did not appear in the criminal complaint and probable cause affidavit, Trooper Meenan later testified that defendant also appeared to be nervous, and that his hands were shaking. Based on these observations, Trooper Meenan requested permission to search defendant's vehicle. Defendant shrugged his shoulders.

Having secured what he considered to be defendant's consent, Trooper Meenan ordered passenger Campbell out of the car. A patdown search of Campbell was then conducted, and a marijuana pipe and a small amount of marijuana was discovered in Campbell's front shirt pocket. While this patdown took place, Trooper Brian

---

1. The defendant wears glasses.

Travis arrived for backup assistance. Thereafter, Trooper Travis stood watching defendant and Campbell at the rear of defendant's vehicle, while Trooper Meenan began his search of the vehicle. An "Altoid" candy tin containing "at least one marijuana cigarette" and three screens was discovered under the driver's seat.

At that point, Trooper Meenan informed defendant that he would be arrested by summons for charges relating to the discovery of the marijuana in the candy tin. Trooper Meenan also informed defendant that the charges could "go away" if defendant agreed to become involved with an undercover narcotics unit, and that defendant should contact him if he was interested. Then defendant was permitted to drive away, notwithstanding his "red and glassy" eyes. No field sobriety test was conducted before defendant's departure.

A summons for defendant's arrest was filed August 9, 1995, nearly five months after the date the marijuana was discovered. Defendant was charged with possession of a small amount of marijuana, 35 P.S. §780-113(a)(31)(i), and possession of drug paraphernalia, 35 P.S. §780-113(a)(32). We note that the arrest report on which the summons was based was not prepared until May 17, 1995, almost two months after the incident.

Defendant filed a timely omnibus pretrial motion, and a suppression hearing was held on March 28, 1996. Troopers Meenan and Travis testified on behalf of the Commonwealth, and defendant testified on his own behalf. Briefs were submitted by the parties, and we now turn to the merits of defendant's motion.

In his motion, defendant alleges that marijuana discovered in his car should be suppressed on the grounds that it was obtained in contravention of his federal and state constitutional rights. Specifically, defendant asserts that his rights under the Fourth Amendment of the United

States Constitution and under Article I, Section 8 of the Pennsylvania Constitution were violated. When a defendant moves to suppress physical evidence, the Commonwealth bears the burden of establishing by a preponderance of the evidence that the challenged evidence was not obtained in violation of defendant's rights. *Commonwealth v. Evans,* 443 Pa. Super. 351, 355, 661 A.2d 881, 883 (1995); *Commonwealth v. Culp,* 378 Pa. Super. 213, 218, 548 A.2d 578, 580 (1988).

The Fourth Amendment, which is binding upon the individual states through the Fourteenth Amendment, provides in pertinent part:

"[T]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures shall not be violated, and no warrant shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Constitution Amendment IV; *Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961); *Commonwealth v. Wilson,* 440 Pa. Super. 269, 275, 655 A.2d 557, 560 (1995). The Pennsylvania Constitution provides even greater protection to the individual against unreasonable searches and seizures, providing:

"The people shall be secure in their persons, house, papers and possessions from unreasonable searches and seizures, and no warrant to search any place or to seize any person or things shall issue without describing them as nearly as may be, nor without probable cause, supported by oath or affirmation subscribed to by the affiant." Pennsylvania Constitution Article I, Section 8; *Commonwealth v. Parker,* 422 Pa. Super. 393, 399, 619 A.2d 735, 737-38 (1993).

In the instant case, the first step in analyzing whether defendant's rights were violated is to determine whether Trooper Meenan conducted a lawful traffic stop of defendant's vehicle. At the suppression hearing, Trooper Meenan testified that his decision to stop defendant's vehicle was based on the trooper's observation of two violations of the Vehicle Code. Specifically, Trooper Meenan testified that the rear bumper on defendant's vehicle failed to ride between 16 and 20 inches from the ground, and that defendant had an obstructed view through his rear windshield. Based on these facts, Trooper Meenan stopped defendant's vehicle.

It is well-established law that when a police officer observes things which cause him to conclude that criminal activity may be afoot, the officer is empowered to briefly stop the suspicious person for the purpose of making reasonable inquiries to either substantiate or dispel the officer's suspicions. *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Further, the Vehicle Code also grants police officers the right to briefly detain an individual for the purpose of checking the relevant license, registration and insurance information when there are "articulable and reasonable grounds to suspect a violation of [the Vehicle Code]."[2]

---

2. The United States Supreme Court has held that safety considerations allow an officer who has effectuated a lawful traffic stop to order the driver from the vehicle. *Pennsylvania v. Mimms,* 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977); *Commonwealth v. Brown,* 439 Pa. Super. 516, 528, 654 A.2d 1096, 1100, *alloc. denied,* 544 Pa. 642, 664 A.2d 972 (1995). The officer need not articulate a reasonable basis for believing that criminal activity is afoot, or that the driver is armed and dangerous. *Brown, supra.* Therefore, assuming *arguendo* that Trooper Meenan's traffic stop of defendant was lawful, his request that defendant exit the vehicle was entirely proper.

75 Pa.C.S. §6308(b); *Commonwealth v. Whitmyer,* 542 Pa. 545, 551, 668 A.2d 1113, 1117 (1995); *Commonwealth v. Gommer,* 445 Pa. Super. 571, 576, 665 A.2d 1269, 1271 (1995); *Commonwealth v. Henderson,* 444 Pa. Super. 170, 176, 663 A.2d 728, 731 (1995); *Commonwealth v. Lopez,* 415 Pa. Super. 252, 259, 609 A.2d 177, 181, *alloc. denied,* 533 Pa. 598, 617 A.2d 1273 (1992). See *Commonwealth v. Swanger,* 453 Pa. 107, 307 A.2d 875 (1973).

The Pennsylvania Supreme Court recently held that the standards "reasonable and articulable" and "probable cause" are phrases whose differing language "amount to nothing more than a distinction without difference." *Whitmyer, supra* at 550-51, 668 A.2d at 1116. See *Commonwealth v. McElroy,* 428 Pa. Super. 69, 74-75, 630 A.2d 35, 38 (1993). Therefore, in reviewing whether or not there were reasonable and articulable grounds to justify Trooper Meenan's decision to stop defendant, the court must consider the totality of the circumstances to ascertain whether there was a "particularized and objective basis" for suspecting defendant of criminal activity. *Evans, supra* at 358, 661 A.2d at 884; *Wilson, supra* at 275-76, 655 A.2d at 560. See *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).

In the present case, defendant argues that there was no reasonable and articulable basis for Trooper Meenan's decision to initiate a traffic stop of defendant's vehicle. Rather, defendant contends that the incident constituted a pretextual stop. After reviewing the evidence and the applicable legal standards, we agree.

Section 4536 of the Vehicle Code, 75 Pa.C.S. §4536 provides:

"No person shall operate any vehicle upon a highway without bumpers of a type specified by regulations of the department in both front and rear unless the vehicle was originally designed and manufactured to be used without bumpers. . . ."

The *regulations* referred to in the Vehicle Code are contained in title 67 of the Pennsylvania Code entitled Transportation at section 175.78 labeled Chassis, subsection (e) Bumpers, at subsection (5), it provides:

"*Some part* of a horizontal bumper bar on passenger vehicles *shall fall within* 16-20 inches above ground level." 67 Pa. Code §175.78(e)(5). (emphasis added)

At the suppression hearing, Trooper Meenan testified that he observed the bumper on defendant's vehicle "riding extremely low" to the ground, which the trooper believed to be a violation of the Vehicle Code. Clearly, this is not what the regulation requires. There was no evidence presented by the Commonwealth in its brief or at the suppression hearing to indicate that defendant was in violation of the actual requirements of the above regulation.

Additionally, Trooper Meenan testified that the engine in defendant's trunk obstructed defendant's rear view, which he also believed constituted a violation of the Vehicle Code. The relevant section of the code addressing windshield obstructions states:

"No person shall drive any motor vehicle with any sign, poster or other nontransparent material, including ice or snow, *upon the side wings or side or rear windows of the vehicle* which materially obstructs, obscures or impairs the driver's clear view of the highway or any intersecting highway." 75 Pa.C.S. §4524(b). (emphasis added)

Once again, the plain language of the statute clearly demonstrates the unsoundness of the Commonwealth's argument that defendant's conduct was in violation of the Vehicle Code. The facts of the instant case reveal that there was nothing on the surface of the rear window which materially obstructed defendant's view of the road. Therefore, the Commonwealth again fails to present any evidence which would indicate that defendant was in violation of this section of the Vehicle Code.

In further support of our findings are two recent Superior Court decisions which addressed situations factually analogous to the case at bar. In *Commonwealth v. Benton,* 440 Pa. Super. 441, 655 A.2d 1030 (1995), the defendant was stopped because the investigating officer believed that an air freshener hanging from the rear view mirror constituted a violation of 75 Pa.C.S. §4524. *Id.* at 443, 655 A.2d at 1031. After receiving permission from the driver to search the car, the state trooper discovered almost 300 grams of cocaine under the passenger seat. *Id.* at 444, 655 A.2d at 1032. The defendant's motion to suppress the cocaine was denied, and the defendant was subsequently convicted on charges stemming from discovery of the cocaine. *Id.*

On appeal, the Superior Court stated that the standard used in determining the legality of a traffic stop is whether it is "the result of a reasonable belief on the part of the officer that the Vehicle Code is being violated." *Id.* at 446, 655 A.2d at 1033. The court explained that this standard does not require that an actual violation be established, but rather that there must be a reasonable basis for the police officer's belief in order for the stop to be valid. *Id.* Applying this standard to the facts in *Benton,* the court held:

"There was no testimony whatsoever that the object materially obstructed, obscured or impaired the driver's

vision, or appeared to do so, nor did the court hear how the [air freshener] constituted or appeared to constitute a safety hazard. As a result, the finding of the suppression court that Trooper Walsh reasonably believed a violation existed is not supported by the evidence.

"Because the suppression court's finding is not supported by the evidence, its legal conclusion based on that finding, namely, that the stop was lawful, was erroneous.

"The court's finding that Trooper Walsh was credible does not alter our conclusion. A close reading of Walsh's testimony leads to the conclusion that the trooper believed that *all* objects hanging from a rear view mirror constitute violations of section 4524. . . . The plain language of the statute establishes otherwise, however, and makes unlawful only those items which materially obstruct, obscure or impair a driver's vision. Though credible, Walsh's testimony simply did not set out reasonable and articulable grounds for believing a section 4524 violation occurred." *Id.* at 448-49, 655 A.2d at 1034.

Similarly, in *Commonwealth v. Felty,* 443 Pa. Super. 559, 662 A.2d 1102 (1995), the defendant was pulled over because he had an object hanging from his rear view mirror. *Id.* Here, too, the investigating officer believed that this constituted a violation of 75 Pa.C.S. §4524(c). *Id.* at 565, 662 A.2d at 1105. Once again, the Superior Court suppressed evidence discovered during the stop on the grounds that the stop was improper. *Id.* at 566, 662 A.2d at 1106. Citing *Benton,* the court stated that since there was no evidence to show that the hanging object materially obstructed the defendant's view, there were no reasonable and articulable grounds for suspecting a motor vehicle violation had occurred,

and thus the officer's mere belief that a violation had occurred did not warrant a stop of the vehicle. *Id.* at 565, 662 A.2d at 1105.

We find the rationale set forth in *Benton* and *Felty* to be controlling in the instant case. Therefore, even if we were to find credible Trooper Meenan's testimony regarding his belief as to the Vehicle Code requirements for bumpers and unobstructed rear views, the plain language of the statutes establish that there was no reasonable basis for his belief. Consequently, in keeping with *Benton* and *Felty,* we find that Trooper Meenan's testimony fails to set forth reasonable and articulable grounds for believing a Vehicle Code violation had occurred. As such, the traffic stop of defendant was unlawful, and the contraband discovered as a result of the stop must be suppressed as "fruit of the poisonous tree." *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

We note that even if the initial traffic stop of defendant's vehicle had been lawful, the impropriety of the subsequent search would also require us to suppress the marijuana discovered from the search.

The Commonwealth argues that the interaction between Trooper Meenan and defendant following the return of defendant's license and registration was a mere encounter from which defendant was free to leave, and therefore his shrug to Trooper Meenan's request to search the vehicle constituted valid consent. We disagree, and instead find that defendant was subject to a noncustodial detention from which he would not reasonably believe he was free to leave. Therefore, defendant's consent was not voluntarily given, and must be deemed invalid.

Assuming *arguendo* that the initial traffic stop was valid, once Trooper Meenan determined that defendant's

credentials were in order, he was constrained to issuing a citation or warning, and then allowing defendant to leave. *Lopez,* supra at 262, 609 A.2d at 182. Trooper Meenan failed to do this, and instead requested defendant's consent to search the vehicle. At this point, then, we must determine the nature of the exchange between Trooper Meenan and defendant.

The United States Supreme Court has established three categories of interactions between citizens and the police. The first category is a "mere encounter," which carries no official compulsion to stop or respond, and which need not be supported by any level of suspicion. See *Florida v. Bostick,* 501 U.S. 429, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991). The second category is an "investigative detention," which subjects an individual to a stop and period of detention, and must be supported by reasonable suspicion. See *Terry, supra.* The final category is an arrest or "custodial detention," which must be supported by probable cause. See *Dunaway v. New York,* 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979).

In determining which of these interactions applies to the instant case, we must look at the totality of the circumstances, as well as considering whether a reasonable person in defendant's position would reasonably believe that he was free to go. *Commonwealth v. Stewart,* 436 Pa. Super. 626, 648 A.2d 797 (1994). Applying these standards to the instant facts, we find that defendant was the subject of the second category of interactions, an investigative detention. Defendant was asked by a uniformed, armed state trooper who had just frisked him if he minded if the officer "took a look" in the vehicle. Defendant testified that he shrugged, as he felt he did not have the power to prevent Trooper Meenan from searching the vehicle. This court

believes that had it been in defendant's position, it too would not reasonably believe it could leave the scene. If there were any questions as to the reasonableness of this belief, they would be quickly dispelled upon Trooper Meenan's frisk of passenger Campbell, as well as the arrival of Trooper Travis, who "watched" defendant and Campbell as Trooper Meenan began the search of the vehicle.

Having determined that the interaction between Troopers Meenan and Travis and defendant constituted an investigative detention, we must next determine whether this detention was based on reasonable and articulable suspicions that criminal activity was afoot. See *Terry, supra; Parker, supra* at 400, 619 A.2d at 738. Trooper Meenan testified at the suppression hearing that his request to search defendant's vehicle was based on the facts that defendant appeared nervous, his hands were shaking, and that his eyes were red and glassy. In the Commonwealth's view, these factors establish reasonable suspicion on which Trooper Meenan based his request to search defendant's vehicle, and when defendant shrugged his shoulders, valid consent was given.

The Superior Court, however, takes a different view as to whether defendant's appearance constituted reasonable and articulable grounds for Trooper Meenan to detain defendant. In *Commonwealth v. Jackson,* 428 Pa. Super. 246, 630 A.2d 1231 (1993), police officers engaged the defendant in an investigatory stop on the basis that he appeared nervous and that his hands were shaking. *Id.* at 249-50, 630 A.2d at 1233, *alloc. denied,* 537 Pa. 647, 644 A.2d 733 (1994). Noting that any reasonable person might engage in conduct of this type if confronted by undercover officers, the Superior Court held that the defendant's behavior did not constitute

reasonable suspicion for escalating a mere encounter into an investigatory stop. *Id.*

Thus, Trooper Meenan's suspicions regarding defendant based on his nervousness and shaky hands did not constitute reasonable suspicion for his request to search the vehicle. Regarding defendant's "red and glassy eyes," we find it unusual that Trooper Meenan was sufficiently concerned about the appearance of defendant's eyes that he conducted a search of the car which ultimately revealed illegal drugs, yet did not perform a field sobriety test on defendant before allowing him to drive away. Therefore, since we find that there were no reasonable and articulable grounds for Trooper Meenan to conduct a search of defendant's vehicle, defendant's consent was not validly given. See *Florida v. Royer,* 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983). It necessarily follows that the evidence obtained as a result of the consent to search the vehicle is tainted, and must be suppressed. See *Wong Sun, supra.*

In sum, we hold that the initial traffic stop of defendant constituted an unlawful pretextual stop; that the questioning of defendant following a check of his credentials constituted an illegal detention; and that defendant's consent was not validly given. We note that our holding today is in keeping with judicial recognition of the constitutional rights afforded to individuals against unlawful searches and seizures. See *Commonwealth v. Tither,* 448 Pa. Super. 436, 671 A.2d 1156 (1996); *Commonwealth v. White,* 543 Pa. 45, 669 A.2d 896 (1995); *Commonwealth v. Shiflet,* 543 Pa. 164, 670 A.2d 128 (1995); *Commonwealth v. Kilgore,* 544 Pa. 439, 677 A.2d 311 (1995); *Henderson, supra; Felty, supra; Benton, supra; Wilson, supra; Jackson, supra; Commonwealth v. Germann,* 423 Pa. Super. 393, 621 A.2d 589; *Commonwealth v. Padilla,* 80 Criminal 1996 (C.P. Mon-

roe); *Commonwealth v. Shipp*, 993 Criminal 1995 (C.P. Monroe); *Commonwealth v. Gregory*, 884 Criminal 1995 (C.P. Monroe); *Commonwealth v. Veal*, 883 Criminal 1995 (C.P. Monroe); *Commonwealth v. Cardillo*, 7 Criminal 1995 (C.P. Monroe).

Also, although it did not lead to the discovery of the contraband, we must note that the patdown of defendant by Trooper Meenan was grossly illegal. At the suppression hearing, both Troopers Meenan and Travis testified that they regularly conduct patdown searches of individuals, male and female, who they order out of vehicles routinely, even in the absence of any evidence that the individuals are armed or otherwise a threat to the officers' safety. These patdown searches are in clear violation of both state and federal constitutional provisions which grant citizens protection from just this type of action. See *Commonwealth v. Cortez*, 507 Pa. 529, 535, 491 A.2d 111, 113 (1985), *cert. denied*, 474 U.S. 950 (1985); *Commonwealth v. Fitzpatrick*, 446 Pa. Super. 87, 92, 666 A.2d 323, 325 (1995); *Commonwealth v. Hoffman*, 403 Pa. Super. 530, 539-40, 589 A.2d 737, 742 (1991).

These searches illustrate either a disturbing unfamiliarity or a chilling disregard on the part of the officers of the individual rights provided to our citizens. We are mindful that government has a compelling interest in eliminating the flow of illegal drugs into our society, and we do not seek to frustrate the effort to rid society of this scourge. But all things are not permissible, even in the pursuit of a compelling state interest. The Constitution does not cease to exist merely because the government's interest is compelling, and a police state does not arise whenever crime gets out of hand. While our rights as citizens are not absolute, they may not be abrogated absolutely.

334

## ORDER

And now, May 1, 1996, defendant's omnibus pretrial motion for suppression is granted.