J-S21042-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| SELIM PALYANI | |
| Appellant | No. 2799 EDA 2012 |

Appeal from the Judgment of Sentence September 14, 2012
In the Court of Common Pleas of Bucks County
Criminal Division at No(s): CP-09-CR-0000162-2011

BEFORE:  SHOGAN, J., ALLEN, J., and OTT, J.

MEMORANDUM BY OTT, J.:                    **FILED OCTOBER 01, 2014**

Selim Palyani appeals from the judgment of sentence imposed on September 14, 2012, in the Court of Common Pleas of Bucks County.  On August 16, 2012, the trial court, sitting without a jury, convicted Palyani of intentional possession of a controlled substance and possession of drug paraphernalia.[1]  The court imposed a term of six to 12 months' incarceration for the intentional possession of a controlled substance offense and a consecutive one year period of probation for the paraphernalia crime.  On appeal, he raises the following two issues:  (1) the trial court erred in admitting physical evidence seized as a result of a warrantless search of the vehicle which Palyani was driving prior to his arrest; and (2) the court erred

---

[1]  35 P.S. §§ 780-113(a)(16) and (a)(32), respectively.

in finding there was sufficient evidence to establish that he constructively possessed contraband that was seized from the vehicle. After a thorough review of the submissions by the parties, the certified record, and relevant law, we affirm.

The trial court set forth the facts as follows:

The facts of this case arise from the Defendant, Selim Palyani (Palyani), a citizen of the country of Georgia, being found to be in constructive possession of a controlled substance, namely heroin and cocaine residue, as well as drug paraphernalia in the form of two syringes.

On October 30, 2010 at approximately 2:13 P.M., Sergeant Michael Rihl of the Bensalem Township Police Department (BTPD) was on duty driving a marked patrol vehicle. He observed the vehicle Palyani was operating stopped in the left oncoming traffic lane. Palyani was, therefore, parked in a lane of travel facing the wrong direction at the intersection of Street Road and Old Street Road in Bensalem Township, Bucks County. Sergeant Rihl pulled up alongside [Palyani]'s vehicle and was situated in the left only turning lane at a red light. Had the light turned green, [Palyani]'s vehicle would have been blocking oncoming traffic and ultimately "impeding the flow of traffic." Both [Palyani] and the passenger of the vehicle appeared lethargic and "hazy." Once Sergeant Rihl eventually got his attention, he instructed Palyani that he was on the wrong side of the road and should make a left at the light when it turns green. As a result, [Palyani] proceeded to make a left into the intersection onto Street Road in front of Sergeant Rihl.

At this point, Sergeant Rihl effectuated a traffic stop of [Palyani]'s vehicle on the shoulder around the forty-seven-hundred block of Street Road. Both the prosecution and defense counsel introduced Google Maps of the specific intersection into evidence. Additionally, both patrol vehicles Sergeant Rihl and Officer Patrick Moore (a responding officer) were operating were equipped with visual and audio recording devices. [Palyani] was informed of this and did not object to their use.

Upon approaching [Palyani], the sergeant again noticed he was lethargic, the pupils of his eyes were constricted, he had slurred speech, and his eyes were glassy. It took a "long time" for [Palyani] to retrieve the necessary papers, i.e., his license and registration. The sergeant ran the passenger's information and he was immediately taken into custody based on an active warrant. Thereafter, based on the traffic violation and the sergeant['s] observations of Palyani, as set forth above, field sobriety tests were administered. The sergeant determined that [Palyani] did not properly and/or successfully complete the field sobriety tests, which, coupled with the above observations, led him to opine that "[Palyani] was unable to operate a motor vehicle safely." [Palyani] was then placed under arrest for suspicion of DUI.

Sergeant Rihl next determined that because both occupants were being taken into custody, the vehicle would need to be impounded. Sergeant Rihl referenced the BTPD's "Procedural Field Directive #2-14," which directs that "Officers will have vehicles removed from the highway when they create [a] substantial hazard to motorists." Sergeant Rihl determined that there was no place on the highway to safely leave [Palyani]'s vehicle and we also found that doing so would be dangerous and present a serious public safety issue. The inventory policy provides that if an officer makes the decision to impound a vehicle, they are to advise Bucks County Radio to contact the on-call tow service. Additionally, an inventory form is required detailing the items taken from the vehicle in order to protect BTPD from liability. Pursuant to BTPD's inventory policy, Officer Moore directed Bucks County radio to contact the on-call tow.

Sergeant Rihl thereafter conducted the inventory search. First, he located [Palyani]'s wallet so it could be transported with [Palyani]. During the inventory search, Sergeant Rihl also located two syringe needles, one in the driver's side door pocket and the other on the backseat, as well as a baggie commonly used to package controlled substances on the floor in front of the passenger seat. The syringes and baggie were submitted to the Bucks County Crime lab for analysis, and were found to contain cocaine and heroin residue, respectively.

Selim Palyani, the operator of the vehicle, was charged with Count 1 - DUI: General Impairment/Incapable of Driving

Safely – 3d Offense, Count 2 - DUI: Controlled Substance – Impaired Ability – 3d Offense, Count 3 – Intentional Possession of a Controlled Substance, Count 4 – Possession of Drug Paraphernalia, and Count 5 – Careless Driving.

On April 4, 2011, [Palyani] pled guilty to all counts before the Honorable Jeffery L. Finely of this Court. On Count 1, [Palyani] was sentenced to not less than one (1), nor more than three (3) years' incarceration. The Court directed that [Palyani] could be screened for house arrest and work release and that he could be presumptively paroled upon completing his minimum term of incarceration with good conduct. On Count 3, [Palyani] received one (1) year of probation. On Count 4, [Palyani] received an additional one (1) year of probation. The Court directed that the sentences on Counts 3 and 4 would run consecutive to each other, but concurrent to the sentence imposed on Count 1.

On November 21, 2011, [Palyani] filed his first petition pursuant to the Post-Conviction Relief Act ("PCRA"), claiming that he was subject to deportation due to his guilty plea. [Palyani] claimed that plea counsel failed to advise him of the collateral consequences of his plea as required by Padilla v. Kentucky, 130 S.Ct. 1473 (2010). On January 30, 2012, the Commonwealth filed a response thereto. Judge Finley conducted hearings on February 3, 2012 and April 30, 2012. On April 30, 2012, the Court granted [Palyani]'s motion to withdraw his guilty plea. The case was assigned to the undersigned and proceeded to trial.

Through newly-retained counsel ("trial counsel"), [Palyani] filed omnibus pre-trial motions on June 22, 2012 and June 26, 2012. [Palyani] sought to suppress statements made to the officers and physical evidence in the form of syringes and baggies containing heroin and cocaine residue recovered from his vehicle. On June 26 and 27, 2012, after a full and complete suppression hearing we denied [Palyani]'s motion to suppress physical evidence and also denied [Palyani]'s motion in limine to suppress his refusal to consent to a blood draw. We deferred ruling, however, on [Palyani]'s motion to suppress statements made to the officers for thirty (30) days to allow the attorneys to submit briefs. Specifically, we directed the Commonwealth to provide transcripts from the video recordings captured by cameras on the officers' vehicles. On August 15, 2012, at the

continued suppression hearing, we granted [Palyani]'s motion to suppress all of his statements to the officers.

Following the suppression hearing, [Palyani] waived a jury trial and proceeded on a stipulated waiver trial. The Commonwealth and trial counsel stipulated to the exhibits. The Commonwealth also presented the testimony of Dr. Thomas Bretell, an expert witness in forensic toxicology, who testified as to the effects of heroin on a user's body.

We found [Palyani] not guilty of Count 2 - DUI: Controlled Substance – Impaired Ability – 3d offense and the summary offense of Careless Driving. We found [Palyani] guilty of Intentional Possession of a Controlled Substance and Possession of Drug Paraphernalia. The Commonwealth moved to nolle pros Count 1 – DUI: General Impairment/Incapable of Driving Safely – 3d Offense, which we granted. At [Palyani]'s request, we deferred sentencing.

On September 14, 2012, on Intentional Possession of a Controlled Substance, we sentenced [Palyani] to not less than six (6), nor more than twelve (12) months' incarceration. On Possession of Drug Paraphernalia, we sentenced [Palyani] to a consecutive one (1) year period of probation. [Palyani] received credit from July 6, 2011 to September 14, 2012, and, accordingly, we directed that the parole portion of his sentence was closed out and his probation was to commence upon his release from custody.[7]

> [7] Palyani was in custody on an immigration detainer and therefore never posted bail on this case. Because he had not yet had an immigration hearing we exercised our discretion and granted him credit for the entire six (6) to twelve (12) month sentence on possession which is why we closed out that portion of his sentence.

Trial Court Opinion, 9/4/2013, at 1 5 (record citations and some footnotes omitted). This appeal followed.

In Palyani's first argument, he claims the trial court erred in denying his motion to suppress, in part, by finding that the warrantless search of his

vehicle constituted a valid inventory search. Palyani's Brief at 9. Palyani contends that "although the vehicle may have been headed for a lawful tow away from the site of the arrest, the *motive in searching the interior of the vehicle was to further an investigatory purpose*." *Id.* (italics in original). Specifically, he states, "Police were investigating a specific crime (driving under the influence of narcotics), questioned [him] regarding that crime, received critical information regarding evidence of that crime, and then immediately searched the vehicle to uncover and seize that evidence." *Id.* at 10. Moreover, Palyani claims he told the officers that it was his girlfriend's car and, therefore, the officers' actions were inconsistent with the holding in *Commonwealth v. Germann*, 621 A.2d 589 (Pa. Super. 1993), because the vehicle did not pose a public safety risk, there was no need for a full-scale search of the vehicle, and the property owner should have been given the opportunity to determine how her property should be secured. *Id.* at 11. Furthermore, Palyani asserts that no attempt was made to obtain a search warrant to uncover evidence, which the police had reason to believe was secreted in the vehicle.

With respect to suppression issues, we are guided by the following:

Our scope and standard of review from the denial of a suppression motion are well settled:

An appellate court's standard of review in addressing a challenge to a trial court's denial of a suppression motion is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are

- 6 -

correct. [Because] the prosecution prevailed in the suppression court, we may consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the factual findings of the trial court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error.

*Commonwealth v. Smith*, 85 A.3d 530, 534 (Pa. Super. 2014) (citation omitted).

In addition, "[i]t is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given their testimony." *Commonwealth v. Elmobdy*, 2003 PA Super 158, 823 A.2d 180, 183 (Pa. Super. 2003). The suppression court is also entitled "to believe all, part or none of the evidence presented." *Commonwealth v. Benton*, 440 Pa. Super. 441, 655 A.2d 1030, 1032 (Pa. Super. 1995). Finally, at a suppression hearing, the Commonwealth has the burden of "establish[ing] by a preponderance of the evidence that the evidence was properly obtained." *Commonwealth v. Culp*, 378 Pa. Super. 213, 548 A.2d 578, 581 (Pa. Super. 1988).

*Commonwealth v. Galendez*, 27 A.3d 1042, 1046 (Pa. Super. 2011).

In *Commonwealth v. Hennigan*, 753 A.2d 245 (Pa. Super. 2000), this Court explained:

Inventory searches are a well-defined exception to the search warrant requirement. The purpose of an inventory search is not to uncover criminal evidence. Rather, it is designed to safeguard seized items in order to benefit both the police and the defendant. Inventory searches serve one or more of the following purposes: (1) to protect the owner's property while it remains in police custody; (2) to protect the police against claims or disputes over lost or stolen property; (3) to protect the police from potential danger; and (4) to assist the police in determining whether the vehicle was stolen and then abandoned.

A warrantless inventory search of an automobile is different from a warrantless investigatory search of the same. An inventory search of an automobile is permitted where: (1) the police have lawfully impounded the automobile; and (2) the police have acted in accordance with a reasonable, standard policy of routinely securing and inventorying the contents of the impounded vehicle….

In determining whether a proper inventory search has occurred, the first inquiry is whether the police have lawfully impounded the automobile, *i.e.*, have lawful custody of the automobile. The authority of the police to impound vehicles derives from the police's reasonable community care-taking functions. Such functions include removing disabled or damaged vehicles from the highway, impounding automobiles which violate parking ordinances (thereby jeopardizing public safety and efficient traffic flow), and protecting the community's safety.

The second inquiry is whether the police have conducted a reasonable inventory search. An inventory search is reasonable if it is conducted pursuant to reasonable standard police procedures and in good faith and not for the sole purpose of investigation. Said another way, the inventory search must be pursuant to reasonable police procedures, and conducted in good faith and not as a substitute for a warrantless investigatory search.

*Id.* at 254-255 (internal citations, quotations and footnotes omitted).

In the present case, the testimony from the June 26, 2013, suppression hearing reveals that on October 30, 2010, police stopped Palyani for a Motor Vehicle Code violation, in which the defendant was stopped in the oncoming traffic lane. N.T., 6/26/2013, at 100. At the time of the stop, Palyani pulled the car onto the shoulder of Street Road in Bensalem Township, Bucks County. *Id.* at 26. Sergeant Rihl testified that both Palyani and his passenger were being taken into custody following the

vehicle stop. With respect to the passenger, he was taken into custody because he had a warrant for his arrest. *Id.* at 38. With regard to Palyani, Sergeant Rihl stated that based on his observations of the defendant and the field sobriety tests, he "made the determination in [his] opinion [that Palyani] was unsafe to operate a motor vehicle[.]" *Id.* at 46. The sergeant then placed Palyani under arrest for suspicion of DUI. Sergeant Rihl testified that he was conducting an inventory search because "both of them were under arrest and [he] can't leave their vehicle abandoned on the highway." *Id.* at 50.

The Bensalem Township Police Department's (BTPD) "Procedural Field Directive #2-14," provides, in pertinent part:

F. Removing Vehicles from the Roadway

1. Officers will have vehicles removed from the highway when they create substantial hazard to motorists. The on-call tow service will be contacted by the Bucks County Police Radio. The vehicle will be taken to the on duty tow service secured facility.

2. In the event that the removed vehicle is of investigative importance or physical evidence, it will be taken to a secured designated location.

3. Officers … in the event that they direct the removal of a vehicle will complete a vehicle-impoundment report and incident report. All vehicles secured by officers will be inventoried and an inventory report completed.

4. Officers will attempt to make contact with the last registered owner to advise the owner that his vehicle has been removed.

Exhibit CS-5, "Procedural Field Directive #2-14 Traffic Ancillary Services," 1/31/1997, at 5-6. It was uncontested that there was no safe place on the

highway to leave the vehicle. N.T., 6/26/2013, at 66. During the inventory search, Officer Moore told Sergeant Rihl that Palyania has informed him there may be a needle on the floor or in the door. *Id.* During his search, Sergeant Rihl discovered two syringes and a glassine baggie with residue in it. *Id.* at 57.

Based on the evidence, the court found the following:

This car … was truly inventoried, as noted on the vehicle impound and inventory record, it was towed by Bakers Towing and it was towed to Bakers. So, the towing company had total control of the vehicle after it was towed from the highway. The only thing[s] seized here were the GPS, cell phone, the sunglasses, the cleaning supplies, the battery cables and the trash that was seized, all after the officer seized the controlled substances and the paraphernalia that were related to them. I meant to make that shorter, but I do think that this is the proper inquiry and not just the DUI.

*Id.* at 133.

In its Rule 1925(a) opinion, the court further opined:

At the suppression hearing, we found the search was a valid inventory search in keeping with [BTPD's] written policy concerning inventory searches.

…

Both the Googles Maps depicting the area in which the vehicle was stopped as well as the footage from Sergeant Rihl and Officer Moore's patrol vehicles demonstrates that in this particular area vehicles are numerous and traffic is constant, as there were cars lining up at the nearby traffic lights even in the middle of the day. Furthermore, Sergeant Rihl explained that if left on the side of the road, someone could "steal" or "break into" the vehicle and, additionally, it presented a hazard to motorists as it would be left on the shoulder of the road next to the right travel lane without its lights on. Therefore, the only safe course of action was to order the vehicle be towed, as under

- 10 -

the BTPD inventory policy where the location of a vehicle creates a "substantial hazard to motorists," the officer is to direct Bucks County Radio to contact the on-call tow service. At this point, Officer Moore did in fact direct a duty tow to their location.

With regard to the second requirement, Sergeant Rihl explained that he was familiar with his department's inventory policy, and identified the relevant sections from said policy. In addition, Sergeant Rihl explained that because both occupants were under arrest and the vehicle was seized, the policy dictates that an inventory search of the vehicle for valuables is to be conducted. Sergeant Rihl also completed an inventory form after searching the vehicle, as is required by the policy. During the search, he located two syringes, one in the driver's side pocket and the other on the backseat, as well as a small plastic baggie on the passenger side floor, all containing heroin and/or cocaine residue. There is no indication that the inventory policy of the Bensalem Township Police Department in place at the time of the stop was unreasonable.

We concluded, therefore, that Sergeant Rihl had lawful custody of the vehicle and his inventory of personal items therein was a valid search without warrant.

Trial Court Opinion, 9/4/2013, at 7-8, 9-10.

We discern no error in the trial court's conclusion. The first inquiry is whether the police have lawfully impounded the automobile. **See Hennigan**, 753 A.2d at 255. Here, the police took lawful custody of the vehicle at issue as both the driver and passenger were arrested, and therefore, there was no one available to drive the vehicle. Indeed, the police's impoundment of the vehicle was based on protecting the community's safety. Moreover, the second inquiry is whether the police have conducted a reasonable inventory search. **Id.** An inventory search is "reasonable if it is conducted pursuant to reasonable standard police

procedures and in good faith and not for the sole purpose of investigation."

*Id.* Contrary to Palyani's argument, that Sergeant Rihl's motive in searching the interior of the vehicle was to further an investigatory purpose because he had received information about contraband in the car, we note that Sergeant Rihl had already initiated the inventory search prior to receiving that information. As indicated by the court, he properly conducted the search in accordance with BTPD's Procedural Field Directive #2-14 because both men were being taken into custody. Furthermore, it bears mentioning the BTPD's inventory search policy only requires the police officer attempt to make contact with the last registered owner to advise the owner that his or her vehicle had been removed. The policy does not require the property owner be given an opportunity to determine how the car should be secured, as contended by Palyani.

Moreover, we note Palyani relies on *Commonwealth v. Germann*, 621 A.2d 589 (Pa. Super. 1993), to support his argument. In *Germann*, a panel of this Court held the police conducted an improper inventory search based on a vehicle's bearing fraudulent inspection validation stickers and the vehicle's poor condition. *Germann* is distinguishable from the present matter because in that case, this Court determined there was no justification for towing the vehicle, and there was no evidence that the vehicle at issue was obstructing traffic or otherwise creating a safety hazard. In the case *sub judice*, there was justification for towing the vehicle and there was

evidence that the car created a safety hazard. As such, we conclude the police had lawful custody of Palyani's vehicle and conducted a reasonable inventory search pursuant to the inventory search exception to the warrant requirement. Accordingly, there is no basis upon which to disturb the court's ruling that denied Palyani's suppression motion. Therefore, his first argument fails.

In his second argument, Palyani claims there was insufficient evidence to support his convictions for possession of a controlled substance and possession of drug paraphernalia. Palyani's Brief at 12. Specifically, he asserts that because his incriminating statements made to police were suppressed, there was insufficient evidence to support the court's finding that he constructively possessed the items seized from the vehicle because the facts did not establish that he had the power/ability to control the contraband and the intent to exercise that control. *Id.* at 12-13. Palyani states there was no evidence as to how long he was in control of the vehicle "[n]or was the incriminating evidence found in areas of the car which the driver would be expected to be aware of." *Id.* at 13. Likewise, he argues "[n]o furtive movements or other suspicious actions were observed that might suggest that [he] had any physical connection to any of the evidence prior to the time he was taken out of the vehicle, which he did not own." *Id.*

Our review of a challenge to the sufficiency of the evidence is well-settled:

A claim challenging the sufficiency of the evidence presents a question of law. *Commonwealth v. Widmer*, 560 Pa. 308, 744 A.2d 745, 751 (2000). We must determine "whether the evidence is sufficient to prove every element of the crime beyond a reasonable doubt." *Commonwealth v. Hughes*, 521 Pa. 423, 555 A.2d 1264, 1267 (1989). We "must view evidence in the light most favorable to the Commonwealth as the verdict winner, and accept as true all evidence and all reasonable inferences therefrom upon which, if believed, the fact finder properly could have based its verdict." *Id.*

Our Supreme Court has instructed:

[T]he facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Ratsamy*, 594 Pa. 176, 934 A.2d 1233, 1236 n. 2 (2007).

*Commonwealth v. Thomas*, 65 A.3d 939, 943 (Pa. Super. 2013).

A person is guilty of possession of a controlled substance if he "[k]nowingly or intentionally possess[es] a controlled or counterfeit substance[.]" 35 P.S. § 780-113(a)(16). A person is guilty of possession of drug paraphernalia if he engages in the "use of, or possession with intent to use, drug paraphernalia for the purpose of planting, propagating, cultivating, growing, harvesting, manufacturing, compounding, converting, producing, processing, preparing, testing, analyzing, packing, repacking, storing,

- 14 -

containing, concealing, injecting, ingesting, inhaling or otherwise introducing into the human body a controlled substance in violation of this act." 35 P.S. § 780-113(a)(32).

When a prohibited item is not discovered on a defendant's person, or in their actual possession, as is the case here, the Commonwealth may prove the defendant had constructive possession of the item.

> Constructive possession is a legal fiction, a pragmatic construct to deal with the realities of criminal law enforcement. Constructive possession is an inference arising from a set of facts that possession of the contraband was more likely than not. We have defined constructive possession as conscious dominion. We subsequently defined conscious dominion as the power to control the contraband and the intent to exercise that control. To aid application, we have held that constructive possession may be established by the totality of the circumstances.
>
> **Commonwealth v. Brown**, 48 A.3d 426, 430 (Pa. Super.2012), *appeal denied*, [] 63 A.3d 1243 (2013) (internal quotation marks and citation omitted). Additionally, it is possible for two people to have joint constructive possession of an item of contraband. **Commonwealth v. Sanes**, 955 A.2d 369, 373 (Pa. Super. 2008), *appeal denied*, 601 Pa. 696, 972 A.2d 521 (2009).

**Commonwealth v. Hopkins**, 67 A.3d 817, 820-821 (Pa. Super. 2013), *appeal denied*, 78 A.3d 1090 (Pa. 2013). "An intent to maintain a conscious dominion may be inferred from the totality of the circumstances, and circumstantial evidence may be used to establish a defendant's possession of drugs or contraband." **Commonwealth v. Harvard**, 64 A.3d 690, 699 (Pa. Super. 2013) (citation omitted), *appeal denied*, 77 A.3d 636 (Pa. 2013).

- 15 -

Here, the trial court found the following:

In this case, we noted that [Palyani] was the operator of the motor vehicle in which the controlled substance(s) and paraphernalia were located and there was only one other passenger present in the vehicle. During an inventory search of said vehicle after [Palyani] was taken into custody, Sergeant Michael Rihl, the investigating officer, located "two syringe needles and a baggie commonly used to package controlled substances." Further, he testified that one syringe was located in the driver's door pocket, the other syringe was located on the backseat, and the baggie was "recovered from the passenger's floor." Furthermore, there was no testimony indicating or explaining that any third party had the ability to exercise any control or dominion over the syringes.

Accordingly, after viewing the evidence in the light most favorable to the Commonwealth as the verdict winner, we believe that there exists sufficient evidence to find [Palyani] guilty of Possession of a Controlled Substance and Possession of Drug Paraphernalia.

Trial Court Opinion, 9/4/2013, at 12-13 (record citations omitted).

Viewing this evidence in the light most favorable to the Commonwealth, and drawing all reasonable inferences therefrom, we agree with the trial court's determination. Palyani attempts to argue that because there was no evidence indicating how long he was in control of the vehicle or any furtive movements on his part, there was insufficient evidence to connect him to the contraband. However, this argument ignores the fact that one syringe was found in the **driver's door pocket**, the other was found on the backseat, and a baggie was found on the passenger-side floor. Sergeant Rihl, an experienced police officer trained in drug matters, opined that the items were consistent with drug use and drug paraphernalia. N.T.,

4/26/2012, at 57-58. Given the testimony as set forth by the trial court, a permissible inference could be made that the syringes and baggie at issue belonged to Palyani and he had the "ability" and "intent" to exercise control or dominion over the contraband found next to the bag. **See Hopkins**, 67 A.3d at 820-821. Therefore, we conclude the Commonwealth presented sufficient circumstantial evidence from which the trial court could reasonably infer that Palyani constructively possessed the contraband. Accordingly, his second argument also fails, and we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/1/2014