J-S14021-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellant | |
| v. | |
| KADIR JACKSON | |
| Appellee | No. 1898 EDA 2013 |

Appeal from the Order June 5, 2013
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0001919-2011

BEFORE:  SHOGAN, J., OTT, J., and PLATT, J.[*]

MEMORANDUM BY OTT, J.:                    **FILED OCTOBER 09, 2014**

The Commonwealth appeals from the order entered June 5, 2013, in the Court of Common Pleas of Philadelphia County suppressing Kadir Jackson's statements to police officers.[1]  The Commonwealth claims the court erred by suppressing Jackson's confession on the ground that there was no probable cause to arrest him.  Based on the following, we affirm.

The trial court set forth the factual history as follows:

> In the course of the investigation of the shooting death of Richard Curry on November 17, 2010, Detective Holmes received

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1]  In compliance with Pennsylvania Rule of Appellate Procedure 311(d), the Commonwealth certified in its July 1, 2013, notice of appeal that the trial court's order terminates or substantially handicaps its prosecution of this case.  **See** Pa.R.A.P. 311(d).

a note from Detective Fetters that Curry's girlfriend, Felicia, had information about Jackson's potential involvement in Curry's murder…. Detective Holmes spoke to Felicia, who told him that Jackson had been having problems with Curry and that there had been an ongoing dispute between two neighborhood groups – 76th Avenue and Sharpnack Street. Felicia knew Jackson's family and was familiar with the individuals associated with the two groups. She also stated that she had seen Jackson rapping in a YouTube video, the content of which was unclear on the record.[2] Felicia also told Detective Holmes that she had heard from friends of friends that Jackson was bragging about the Curry shooting, but the context of the bragging is unclear on the record.

[2] The content of the rap captured in the video may have been about a shooting or may have been about the ongoing conflict between 76th Avenue and Sharpnack Street.

Based upon this information from Felicia and without a warrant, Detective Holmes went to Jackson's home on November 22, 2010 to question him about the murder of Richard Curry. Detective Holmes spoke with Jackson's mother in the front door area while other officers stayed in the alley behind the home. Upon informing Jackson's mother that he wished to speak with Jackson, Jackson's mother called Jackson, and Detective Holmes spoke with Jackson by phone. Jackson told the detective that he was at his girlfriend's house and would speak with detectives in ten minutes at a local Walgreens. Immediately after the phone conversation with Detective Holmes, Jackson exited the house from the back door. There was conflicting evidence as to whether Jackson exited the house with another person. It is unclear to this court whether Jackson was actually fleeing, as he had lied to police about his whereabouts, but his exit from the home could be seen either as an attempt to avoid speaking with police or as his attempt to go to the Walgreens as arranged. Jackson was detained and handcuffed by officers and subsequently transported to the homicide unit at approximately 1:00 p.m. Detective Holmes stated that he put Jackson in custody because Jackson had lied about being at his girlfriend's house, he had attempted to flee from his home, and he was a "person of interest" for the homicide.

Trial Court Opinion, 10/8/2013, 2-3 (footnote omitted).

After Jackson was handcuffed, he was transported down to the police station and was given his **Miranda**[2] warnings. Jackson originally denied any involvement in the shooting, but eventually confessed to shooting Curry with a 9 mm pistol, stating: "I heard that [Curry] was looking for me, and on my way home I ran into him in the driveway of 76th Avenue. [Curry] said to me, 'Let me holla at you.' [Curry] then pulled out a gun, and I pulled mine and shot him. I ran across the street to the other driveway and went home.'" N.T., 4/5/2013, at 91-92.

Jackson was charged with murder, criminal conspiracy, and other related offenses. On November 29, 2012, he filed a pretrial motion to suppress his statement made to police because it was "obtained illegally and unconstitutionally and there was no knowing, intelligent and voluntary waiver of [his] constitutional right to counsel and his constitutional right to remain silent and be free from self-incrimination[.]" Jackson's Pretrial Motion to Suppress Statement, 11/29/2012, at 1. On April 5, 2013, the court held a hearing on the matter. At that time, Jackson also argued the police lacked probable cause to arrest him and, therefore, his statements to police were inadmissible as the fruit of an illegal arrest. N.T., 4/5/2013, at 5-6. Following the hearing, the Commonwealth filed a responsive letter brief on May 2, 2013.

---

[2] **See Miranda v. Arizona**, 384 U.S. 436 (1966).

Subsequently, on June 5, 2013, the trial court entered an order, and corresponding opinion, granting Jackson's motion to suppress because it found the police did not have probable cause to arrest him.[3] The Commonwealth filed this timely appeal.[4]

In the Commonwealth's sole issue, it claims the trial court erred by suppressing Jackson's confession. Commonwealth's Brief at 11. Specifically, the Commonwealth asserts probable cause did exist to support Jackson's arrest based on the following: (1) the victim's girlfriend, "Felicia," was a "reliable" informant who knew Jackson from the neighborhood and gave police information linking Jackson to the murder, including a YouTube video where Jackson "rapped" about his dispute with the victim, and Felicia had heard from mutual friends that Jackson was observed bragging about the killing; (2) when police went to Jackson's home to interview him, he lied about his whereabouts, stating that he was at his girlfriend's house when he was really in the basement of the house; and (3) Jackson fled the house, running from the basement door into a back alley. *Id.* at 12-15. The

_____

[3] On June 20, 2013, the court entered a second order, stating that while it found Jackson's statements at issue were voluntary, the confession was the fruit of a poisonous tree.

[4] The court did not order the Commonwealth to file a concise statement of errors complained of on appeal under Pa.R.A.P. 1925(b). Nevertheless, it filed a concise statement on July 1, 2013. On October 8, 2013, the trial court issued an opinion under Pa.R.A.P. 1925(a), which was substantially similar to its June 5, 2013, opinion.

Commonwealth contends Jackson's "ruse to avoid contact with the police -- with regard to specific matter under investigation -- was a compelling sign of his consciousness of guilt." *Id.* at 15 (citations omitted). Moreover, it states the court improperly minimized the probative value of the information Felicia provided to police and erred by finding her unreliable. *Id.* at 17-19. Lastly, the Commonwealth argues the court erred by failing to contribute any evidentiary significance to Jackson's alleged "flight" from the home because one could not reasonably infer he was merely "hurrying along in order to meet the police at Walgreens as arranged" as the trial court opined in its determination. *Id.* at 19. Based on the totality of the circumstances, the Commonwealth concludes Jackson "had already demonstrated by his conduct that he was intent on evading [the police], rather than deal with the matter forthrightly[,]" and taking him into custody was necessary to arrive "at the truth while he was available to face the consequences." *Id.* at 20.

In reviewing an order granting a defendant's motion to suppress evidence,

> [w]e are bound by that court's factual findings to the extent that they are supported by the record, and we consider only the evidence offered by the defendant, as well as any portion of the Commonwealth's evidence which remains uncontradicted, when read in the context of the entire record. Our review of the legal conclusions which have been drawn from such evidence, however, is *de novo*, and, consequently, we are not bound by the legal conclusions of the lower courts.

*Commonwealth v. Busser*, 56 A.3d 419, 421 (Pa. Super. 2012), *quoting*

*Commonwealth v. Wallace*, 42 A.3d 1040, 1048 (Pa. 2012).

In addition, "[i]t is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given their testimony." ***Commonwealth v. Elmobdy***, 2003 PA Super 158, 823 A.2d 180, 183 (Pa. Super. 2003). The suppression court is also entitled "to believe all, part or none of the evidence presented." ***Commonwealth v. Benton***, 440 Pa. Super. 441, 655 A.2d 1030, 1032 (Pa. Super. 1995). Finally, at a suppression hearing, the Commonwealth has the burden of "establish[ing] by a preponderance of the evidence that the evidence was properly obtained." ***Commonwealth v. Culp***, 378 Pa. Super. 213, 548 A.2d 578, 581 (Pa. Super. 1988).

***Commonwealth v. Galendez***, 27 A.3d 1042, 1046 (Pa. Super. 2011).

With respect to the existence of probable cause for an arrest, we are guided by the following principles:

Probable cause to arrest exists when the facts and circumstances within the police officer's knowledge and of which the officer has reasonably trustworthy information are sufficient in themselves to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested. Probable cause justifying a warrantless arrest is determined by the totality of the circumstances.

***Commonwealth v. Williams***, 2008 PA Super 6, 941 A.2d 14, 27 (Pa. Super. 2008) (internal citations and quotation marks omitted).

. . . . It is the facts and circumstances within the personal knowledge of the police officer that frames the determination of the existence of probable cause. ***See***, ***e.g.***, ***Commonwealth v. Lawson***, 454 Pa. 23, 27, 309 A.2d 391, 394 (1973) ("Probable cause exists if the facts and circumstances known to the officer warrant a prudent man in believing that an offense has been committed.").

***Galendez***, 27 A.3d at 1046.

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable Linda Carpenter, we conclude the Commonwealth's sole issue on appeal merits no relief. The trial court opinion comprehensively discusses and properly disposes of the question presented. *See* Trial Court Opinion, 10/8/2013, at 4-8 (finding the police lacked probable cause based on the following: (1) with respect to the Commonwealth's allegation regarding Felicia's statements to police that Jackson had been bragging to people in the neighborhood that he had murdered the victim, this contention was not supported by the record as Detective Holmes testified Felicia informed him that "[Jackson] was in the area bragging about the shooting of Mr. Ricky Curry,"[5] but to whom Jackson was bragging was unclear, and the detective's testimony does not indicate if Jackson stated he was involved in the shooting or merely talking about the incident; (2) the police lacked sufficient objective facts and independent corroboration where (a) the specificity of Felicia's information was insufficient as it did not reflect a special familiarity with Jackson's affairs because the video was on a public website and the rivalry between Jackson's and the victim's neighborhood groups was likely known by community members, (b) Felicia's background information was not provided to the court nor did the Commonwealth present evidence as to how

---

[5] N.T., 4/5/2013, at 38.

Felicia came upon this information, (c) the Commonwealth did not introduce the YouTube video or any testimony that a police officer or detective saw the video, and (d) there was no police follow-up on Felicia's information about Jackson's bragging, as to whom Jackson had been bragging or as to the specific content of the bragging; (3) while Jackson did lie about his whereabouts to police which is indicative of consciousness of guilt, there was inconclusive evidence of flight because it was unclear whether he was actually attempting to flee from police; and (4) the court was not presented with any other factors to consider along with the perceived flight, other than Felicia's uncorroborated information).

We agree with the court's analysis and we reiterate the sentiment that we "are bound by that court's factual findings to the extent that they are supported by the record." *Busser*, 56 A.3d at 421. Here, the record substantiates the trial court's findings, particularly where Detective Holmes testified that he had a conversation with Felicia regarding the acrimonious relationship between Jackson and the defendant, but he did not formally interview her. N.T., 4/5/2013, at 36. Moreover, other than stating that Felicia told him the two men had an ongoing dispute and that Jackson was in the area "bragging about the shooting," Detective Holmes did not testify that Felicia provided him with any details regarding Jackson's involvement in the shooting. *Id.* at 38. As such, there was no demonstrably reliable information that Jackson committed the murder.

Furthermore, the record indicates that Detective Holmes went to "make contact" with Jackson because "based on information [he] received from the decedent's girlfriend, [he] wasn't going to just take that as a whole. [He] just wanted to make contact with Mr. Jackson to see was there a problem and did he know anything about this incident." *Id.* at 38-39. After the detective arranged to meet with Jackson at another location to question him, Jackson was observed "exit[ing] the rear door [of his home] in haste." *Id.* at 13. As found by the trial court, there was inconclusive evidence to establish whether Jackson had absconded, or whether he was going to meet the police at the designated location. Based on these facts and circumstances, the police only had a falsehood from Jackson with respect to his actual whereabouts. Accordingly, one cannot reasonably infer there was sufficient information to warrant a belief that an offense had been committed by Jackson, supporting probable cause for his arrest. Therefore, because we conclude the trial court, in its opinion, thoroughly discussed and properly disposed of the only issue raised by the Commonwealth on appeal, we rest on its well-reasoned basis.

Order affirmed.

Judge Shogan joins this memorandum.

Judge Platt files a dissenting memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/9/2014

# IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
## TRIAL DIVISION – CRIMINAL SECTION

COMMONWEALTH OF PENNSYLVANIA : 
                                :

       v.                            :        CP-51-CR-0001919-2011

                                  :

KADIR JACKSON                     :

## OPINION

CARPENTER, J.                                         JUNE 5, 2013

The matter before this court arose from Defendant Kadir Jackson's Motion to Suppress his statements made to police. The defense submits that Jackson was arrested without probable cause and thus, his statements must be suppressed as fruit of the poisonous tree. The Commonwealth asserts that the statements were not fruit of the poisonous tree because the arrest was lawful, as it was based on reliable information from the decedent's girlfriend and corroborated by Jackson's actions when the police went to his home.

This court conducted a hearing on April 5, 2013 and letter briefs were submitted by both parties on May 2, 2013. Jackson submitted a supplemental response on May 6, 2013. Based on the testimony and exhibits provided, this court concludes that the officers did not have probable cause to arrest Jackson and, therefore, **GRANTS** Jackson's Motion to Suppress his statements to police.

1

## FACTS

In the course of the investigation of the shooting death of Richard Curry on November 17, 2010, Detective Holmes received a note from Detective Fetters that Curry's girlfriend, Felicia, had information about Jackson's potential involvement in Curry's murder.[1] Detective Holmes spoke to Felicia, who told him that Jackson had been having problems with Curry and that there had been an ongoing dispute between two neighborhood groups – 76th Avenue and Sharpnack Street. Felicia knew Jackson's family and was familiar with the individuals associated with the two groups. She also stated that she had seen Jackson rapping in a YouTube video, the content of which was unclear on the record.[2] Felicia also told Detective Holmes that she had heard from friends of friends that Jackson was bragging about the Curry shooting, but the context of the bragging is unclear on the record.

Based upon this information from Felicia and without a warrant, Detective Holmes went to Jackson's home on November 22, 2010 to question him about the murder of Richard Curry. Detective Holmes spoke with Jackson's mother in the front door area while other officers stayed in the alley behind the home. Upon informing Jackson's mother that he wished to speak with Jackson, Jackson's mother called Jackson, and Detective Holmes spoke with Jackson by phone. Jackson told the detective that he was at his girlfriend's house and would speak with detectives in ten minutes at a local Walgreens. Immediately after the phone conversation with Detective Holmes, Jackson exited the house from the back door. There was conflicting evidence as to whether Jackson exited the house with another person. It is unclear to this court

---

[1] See exhibit marked C-1M for Felicia's note.
[2] The content of the rap captured in the video may have been about a shooting or may have been about the ongoing conflict between 76th Avenue and Sharpnack Street.

2

whether Jackson was actually fleeing, as he had lied to police about his whereabouts, but his exit from the home could be seen either as an attempt to avoid speaking with police or as his attempt to go to the Walgreens as arranged. Jackson was detained and handcuffed by officers and subsequently transported to the homicide unit at approximately 1:00 p.m. Detective Holmes stated that he put Jackson in custody because Jackson had lied about being at his girlfriend's house, he had attempted to flee from his home, and he was a "person of interest" for the homicide.

## DISCUSSION

Probable cause exists if the facts and circumstances within the knowledge of the police officer at the time of the arrest are sufficient to justify a person of reasonable caution in believing the suspect has committed or is committing a crime.[3] In determining whether probable cause existed, a court must consider the "totality of the circumstances" as they appeared to the arresting officer.[4] As provided by the Pennsylvania Superior Court:

> When we examine a particular situation to determine if probable cause exists, we consider all the factors and their total effect, and do not concentrate on each individual element.... We also focus on the circumstances as seen through the eyes of the trained officer, and do not view the situation as an average citizen might.... Finally, we must remember that in dealing with questions of probable cause, we are not dealing with certainties. We are dealing with the factual and practical considerations of everyday life on which reasonable and prudent [persons] act.[5]

Where the police act upon information obtained from an informant, the informant's veracity, reliability and basis of knowledge must be assessed in the probable cause

---

[3] *Com. v. Quiles*, 619 A.2d 291, 298 (Pa. Super. 1993).
[4] *Id.*
[5] *Id.* (citing *Com. v. Kazior*, 410 A.2d 822, 824 (1979)).

3

determination.[6] The reliability of an informant should be established by some objective facts that would enable any court to conclude that the informant was reliable.[7] Where police are acting solely on the basis of an informant's tip and the reliability of the informant is not established by objective facts, it is essential that the tip provide adequate indication that the informant has actual knowledge that criminal conduct is occurring or has occurred at the time the warrantless arrest is made.[8] It is important that an informant's tip provides "inside information" demonstrating a special familiarity with the defendant's affairs.[9] As such, independent police corroboration of this inside information can impart additional reliability to the tip to support a finding of probable cause.[10]

The Commonwealth avers that there was probable cause for arrest, based upon *Illinois v. Gates*, because Felicia was a reliable informant because she was a known individual who had spoken to Detective Holmes, she had knowledge of all of the parties, and that there was a common sense reliability that she would relay truthful information due to her relationship with the decedent. The Commonwealth argued that, most importantly, the specificity of what Felicia told detectives – that there was a history of conflict between 76th Avenue and Sharpnack Street and that friends of friends told her that Jackson had been bragging to people in the neighborhood that he had "murdered Ricky"[11] – supported a finding of reliability. This court disagrees. The assertion that Jackson "murdered Ricky"" is unsupported by the record as Detective Holmes testified

---

[6] *In Interest of O.A.*, 717 A.2d 490, 495-96 (Pa. 1998) (citing *Illinois v. Gates*, 462 U.S. 213, 233 (1983)).
[7] *In Interest of O.A.*, 717 A.2d 490, 497 (Pa. 1998).
[8] *Id.*
[9] *Id.* at 498.
[10] *Id.*
[11] Commonwealth Letter Brief 5/2/2013.

4

that Felicia had told him that "[Jackson] was in the area bragging about the shooting of Mr. Ricky Curry."[12] To whom Jackson was bragging is unclear; regardless, the detective's testimony does not indicate if Jackson was even involved in the shooting or if he was simply talking about the incident. Further this court found the specificity of Felicia's information to be insufficient, as it did not reflect a special familiarity with Jackson's affairs. The video was posted on a public website and the rivalry between neighborhood groups is likely something known by members in a community. Additionally, the Commonwealth's reliance on Felicia's common sense reliability, while tempting, is unconvincing, as the converse argument – that an individual saddened by the recent shooting of a loved one may say or believe anything so that someone is held responsible for the crime – would render the information equally unreliable.

Therefore, this court has applied *Illinois v. Gates* which requires independent police corroboration of the information, however slight. While Felicia's information appears plausible, there are insufficient objective facts and police corroboration to render her information reliable. This court does not know who Felicia is (this court does not even know her last name), how she knows the information that she provided to police, or if any of the information is actually accurate. Additionally, her name and information provided are completely absent from the police activity log. This court was not presented with a copy of the YouTube video nor any testimony that a police officer or detective ever saw the video. Also, there was no police follow-up on Felicia's information about Jackson's bragging, as to whom Jackson had been bragging or as to the specific content of the bragging.

---

[12] N.T. 4/5/2013 at 38:5-6.

5

Having found insufficient objective facts and corroboration to establish probable cause, this court next addressed the circumstances of Jackson's perceived flight and his lying about his whereabouts to Detective Holmes. Specifically, this court assessed whether this "flight", in combination with the uncorroborated tip, rose to the requisite level of probable cause to arrest. In *Illinois v. Wardlow*[13], the United States Supreme Court described flight as "the consummate act of evasion" and found that while flight is not necessarily indicative of wrongdoing, it is certainly suggestive of such.[14] The Court opined that when police approach an individual, without reasonable suspicion or probable cause, the individual may ignore the police and go about his business and any "refusal to cooperate, without more, does not furnish the minimal level of objective justification needed for a detention or seizure."[15] Unprovoked flight, however, is not simply a mere refusal to cooperate and is, itself, the exact opposite of "going about one's business."[16] The Pennsylvania Supreme Court has consistently held that while flight may indicate a certain 'consciousness of guilt', flight alone is insufficient to establish probable cause for an arrest.[17] Relying on the precedent set forth by United States District Court in the Eastern District Pennsylvania, our Supreme Court stated:

> Flight, coupled with other factors, such as knowledge of the defendant's prior criminal record or the sight of contraband or screams for help or reliable information that defendant had attempted to commit or had committed a crime, may be strong

---

[13] 528 U.S. 119 (2000).
[14] *Id.* at 124.
[15] *Id.* at 125 (citing *Florida v. Bostick*, 501 U.S. 429, 437 (1991)).
[16] *Illinois v. Wardlow*, 528 U.S. at 125.
[17] *Com. v. Jeffries*, 311 A.2d 914, 916-17 (1973) (citing *Com. v. Collins*, 269 A.2d 882, 884 (1970)). *See also Wong Sun v. United States*, 371 U.S. 471, 480-82 (1963) (finding no probable cause where non-corroborated tip was followed by flight).

6

indication that there is something that those fleeing wish to hide from the police and may constitute probable cause for arrest.[18]

In the instant case, there was inconclusive evidence of flight. Jackson did lie about his whereabouts when Detective Holmes came to his home and this court recognizes that this could be evidence of consciousness of guilt; however, it is unclear whether Jackson was actually attempting to flee from police. Further, this court was not presented with any other factors to consider along with the perceived flight, other than Felicia's uncorroborated information. In accordance with the precedent of the courts this Commonwealth, this court cannot make a finding of probable cause based on flight alone. *See generally Wong Sun v. United States*, 371 U.S. 471, 480-82 (1963) (finding no probable cause where non-corroborated tip was followed by flight).

## CONCLUSION

For the reasons set forth in this Opinion, this court finds that the police did not have probable cause to arrest Jackson and **GRANTS** Jackson's motion to suppress his statements to police.

_____
Carpenter, J.

---

[18] *Com. v. Jeffries*, 311 A.2d at 916-17 (citing *United States v. Margeson*, 259 F.Supp. 256 (E.D.Pa.1966)).

7