J-S63010-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| KHYREE GARDENHIRE | |
| Appellant | No. 1598 WDA 2016 |

Appeal from the Judgment of Sentence September 27, 2016
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0003073-2016

BEFORE:  BOWES, J., SOLANO, J., AND FORD ELLIOTT, P.J.E.

MEMORANDUM BY BOWES, J.:                **FILED  DECEMBER 12, 2017**

Khyree Gardenhire appeals from the September 27, 2016 judgment of sentence of three to six months imprisonment imposed following his bench-trial convictions for possession of a controlled substance with intent to deliver ("PWID") and possession of a controlled substance.  We affirm.

The trial court succinctly summarized the facts adduced at the suppression hearing as follows:

> [At approximately 7:00 p.m.] on November 17, 2015, Detective Joseph Brown, and his partner, Detective Robinson, entered an establishment known as Red's [Ringside Café] on Warrington Avenue, Pittsburgh, PA, to apprehend a suspect wanted under an active arrest warrant and who fit the description given by another detective. (N.T., [9/27/16, at] 5) Upon entering, Detective Brown observed two males sitting next to each other within several feet of the entrance of the door. ([*Id*. at] 5) One male fit the description for the arrest warrant, and the other male was Appellant who was wearing a ski mask [covering his

face].  ([***Id***.]) Once the detectives approached the men, the man who fit the arrest warrant description spontaneously uttered, "I have a gun[.]" ([***Id***. at 5-6]).  Thereafter, Detective Robinson began to frisk [that] suspect for firearms.

At that point, Detective Brown observed Appellant, with his hand in his pocket, clenching on an unknown object. ([***Id***. at] 6) Furthermore, Detective Brown testified to the fact that the establishment is located in a high-crime area, for it was well known that the establishment had a history of violence. ([***Id***. at] 7) Due to this circumstance and because Detective Brown feared for his safety, he said to Appellant, "Sir, get your hand out of your pocket. Take your hands out. Let me see your hands." ([***Id***. at] 6) Appellant then removed his left hand from his pocket[, holding "89 stamp bags of heroin."] ([***Id***].) At that time, Detective Brown, who had experience with the packaging and appearance of heroin, believed Appellant possessed heroin. ([***Id***.]) Appellant was then handcuffed and placed under arrest by Detective Brown. [***Id***. at 7].

Trial Court Opinion, 6/16/17, at 1 (footnote omitted).

The trial court made credibility determinations in favor of Detective Brown regarding his account of the interaction with Appellant, found that the interdiction was constitutional, and denied Appellant's motion to suppress the physical evidence of the heroin.  Following a non-jury trial, Appellant was convicted of possession of a controlled substance with intent to deliver and possession of a controlled substance.  Appellant waived the presentence investigation, and the trial court immediately imposed the above-referenced sentence of three to six months imprisonment for PWID.  No further penalty was imposed on the possession conviction.  This timely appeal followed.

Appellant complied with the trial court's directive to file a concise statement of matters complained of appeal pursuant to Pa.R.A.P. 1925(b).

While the Rule 1925(b) statement leveled four interrelated issues challenging the trial court's denial of his motion to suppress the physical evidence, Appellant condensed these claims into one question on appeal, "Whether the trial court erred in denying appellant's motion to suppress." Appellant's brief at 3.

Our standard of review when reviewing an order denying a suppression motion is well settled.

> An appellate court may consider only the Commonwealth's evidence and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the factual findings of the trial court, the appellate court is bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error. However, it is also well settled that the appellate court is not bound by the suppression court's conclusions of law.

*Commonwealth v. Tam Thanh Nguyen*, 116 A.3d 657, 663-64 (Pa.Super. 2015) (citations omitted). Further, "[w]ith respect to factual findings, . . . it is the sole province of the suppression court to weigh the credibility of the witnesses[, and] the suppression court judge is entitled to believe all, part or none of the evidence presented." *Id*. at 664 (quoting *Commonwealth v. Benton*, 655 A.2d 1030, 1032 (Pa. 1995)). Our scope of review is limited to the evidence presented at the suppression hearing. *In re L.J.*, 79 A.3d 1073, 1080 (Pa. 2013).

At the outset, we review the three categories of police interdiction and the corresponding levels of suspicion required to support those interactions.

> The first of these is a "mere encounter" (or request for information) which need not be supported by any level of suspicion, but carries no official compulsion to stop or respond. The second, an "investigative detention" must be supported by reasonable suspicion; it subjects a suspect to a stop and period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of arrest. Finally, an arrest or "custodial detention" must be supported by probable cause.

**Commonwealth v. Williams**, 73 A.3d 609, 613 (Pa.Super. 2013).

Appellant's first contention is that Detective Brown was not entitled to the benefit of the good faith exception to the exclusionary rule, which is not currently recognized in Pennsylvania. This argument is wholly misplaced because it assumes inaccurately that the detective's interaction with Appellant was based upon an invalid arrest warrant. Appellant equates the case at bar with the scenarios in **Commonwealth v. Edmunds**, 586 A.2d 887 (Pa. 1991) and **Commonwealth v. Johnson**, 86 A.3d 182 (Pa. 2014), two cases where our High Court refused to apply the good faith exception to the exclusionary rule as a result of the Commonwealth's execution of an invalid search warrant. In **Edmunds**, the High Court rejected the trial court's application of the good faith exception to admit marijuana found in a home pursuant to a search warrant as the warrant did not list that particular structure. Similarly, in **Johnson**, the Supreme Court concluded that Pennsylvania would not adopt the good faith exception for the purpose of admitting physical evidence obtained incident to an invalid arrest warrant

that was executed following the traffic stop of a car in which the appellant was a passenger.

Relying upon **Edmunds** and **Johnson**, Appellant argues that, since the only reason Detective Brown was at Red's Ringside Café was to execute an arrest warrant on a person who matched the description of a possible suspect, the evidence seized from the subsequent interdiction with him must be suppressed. He reasons that all three cases align because Detective Brown was "operating under the good faith as to the validity of a warrant" when he initiated the interdiction with Appellant. Appellant's brief at 13. We disagree.

Appellant's fixation with the good faith exception is a red herring. First, unlike the private residence in **Edmunds** or the automobile in **Johnson**, Appellant was sitting in a bar, a place of public accommodation, wearing a ski cap over his face when Detective Brown approached him and his companion, who spontaneously volunteered that he was armed. At that point, Detective Brown's purpose for entering the bar was immaterial. In reality, unless there was some show of force leading a person to feel compelled to answer, when Detective Brown approached Appellant and his companion in a public place, it was a mere encounter that required no level of suspicion. **Terry v. Ohio**, 392 U.S. 1, 34, (1968) ("There is nothing in the Constitution which prevents a policeman from addressing questions to anyone on the streets."). As Detective Brown was authorized to be present

in the bar regardless of his possession of an arrest warrant, valid or not, the case law that Appellant seeks to invoke is inapt because the warrant was not the basis for the seizure. Stated plainly, unlike the contacts in *Edmunds* and *Johnson*, the initial interaction between Appellant and Detective Brown was constitutional notwithstanding the arrest warrant.

Appellant's second argument actually addresses the pertinent question in this appeal, *i.e.*, whether Detective Brown was justified in requesting that Appellant remove his hands from his pockets. Appellant claims that Detective Brown lacked reasonable and articulable suspicion pursuant to *Terry*, *supra,* to justify the seizure. Appellant's perspective is founded squarely upon the assertion that Detective Brown brandished his sidearm and leveled it at him while the detective repeated his directive for Appellant to remove his hands from his pocket. Unfortunately for Appellant, Detective Brown categorically denied that he brandished his service weapon during the exchange, and the trial court made an explicit credibility determination in the detective's favor. N.T., 9/27/16, at 10, 23. In light of our deference for the trial court's role as the ultimate arbiter of fact, we are bound by its decision. *See Tam Thanh Nguyen*, *supra*. Thus, this aspect of Appellant's argument is baseless.

Nevertheless, we agree that Appellant was seized when Detective Brown demanded that Appellant remove his hands from his pockets. The relevant question is whether the directive was so restrictive and

authoritative that a reasonable person would feel compelled to comply. *Florida v. Bostick*, 501 U.S. 429, 436 (1991) ("the appropriate inquiry is whether a reasonable person would feel free to decline the officers' requests or otherwise terminate the encounter"); *Commonwealth v. Mathis*, 2017 WL 5617623, at *10 (Pa. 2017) (quoting *Commonwealth v. Mendenhall*, 715 A.2d 1117, 1120 (Pa. 1998)) ("the pivotal inquiry is whether, considering all the facts and circumstances evidencing the exercise of force, a reasonable person would have thought he was being restrained.").

In *Mathis*, *supra* our Supreme Court recently addressed this precise issue and concluded that Mathis had not been detained when parole officers interacted with him while conducting a routine home visit of another individual. The High Court reasoned that a reasonable person would not have felt restrained from leaving the home when left alone in the kitchen with clear access to an exit while the agents focused attention on the parolee, and, when an agent spoke to Mathis, he used a conversational tone and polite requests explained in terms of ensuring safety.

The instant scenario is different from the relaxed interaction depicted in *Mathis*. There was no indication that Appellant could access the bar's exit, that Detective Brown used a conversational tone, or that he politely explained the request in terms of safety. Instead, Detective Brown approached Appellant while he was seated at a table in the bar and prior to initiating the encounter, Detective Brown immediately and repeatedly

demanded that Appellant reveal his hands. Under these circumstances, a reasonable person would not have believed he was free to ignore Detective Brown's request.

Once the encounter escalated to a seizure, the interaction needed to be justified or supported by reasonable suspicion to be constitutional pursuant to *Terry*. "To establish reasonable suspicion, the officer must articulate specific observations which, in conjunction with reasonable inferences derived from those observations, led him to reasonably conclude, in light of his experience, that criminal activity was afoot and that the person he stopped was involved in that activity." *Commonwealth v. Caban*, 60 A.3d 120, 128 (Pa.Super. 2012) (citation omitted). The applicable test is an objective one. As the Supreme Court explained in *Terry*:

> [I]n justifying the particular intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion. The scheme of the Fourth Amendment becomes meaningful only when it is assured that at some point the conduct of those charged with enforcing the laws can be subjected to the more detached, neutral scrutiny of a judge who must evaluate the reasonableness of a particular search or seizure in light of the particular circumstances. And in making that assessment it is imperative that the facts be judged against an objective standard: would the facts available to the officer at the moment of the seizure or the search 'warrant a man of reasonable caution in the belief' that the action taken was appropriate?

*Terry*, *supra* at 21-22.

Instantly, Appellant's detention was justified due to the danger posed by Appellant and his companion. Upon entering a bar that is considered a high-crime location, Detective Brown observed Appellant sitting with a ski mask covering his face despite the mild temperature. Appellant was in close proximity with another male who, after seeing detectives approaching, stood up and exclaimed, "I have a gun!" N.T., 9/27/16, at 6, 8, 16. Almost simultaneously, Detective Brown observed Appellant set down the object that he had been holding, place his hand in the pocket of his hooded sweatshirt, and clench a concealed object. The detective made the reasonable inference that Appellant posed a threat, and since Appellant's movements placed Detective Brown in fear for his safety, he instructed, "Sir, get your hand out of your pocket. Take your hands out. Let me see your hands." *Id*. at 6. We have no doubt that a safety concern was presented when Appellant's cohort announced that he was armed because that statement necessarily contributes to the totality of the circumstances analysis when assessing whether Appellant posed a safety risk to Detective Brown. *See Mathis*, *supra* at *9 ("parole agents have the authority to conduct a protective *Terry* frisk of non-parolees within the course of executing their statutorily imposed duties, so long as reasonable suspicion supports the agents' conduct.").[1] Thus, examining the totality of the

---

[1] Notably, the detective herein did not conduct a frisk, he simply asked that
*(Footnote Continued Next Page)*

circumstances, it is obvious that the foregoing scenario established that Appellant posed a danger and that a legitimate fear for the detectives' safety existed to support a custodial seizure pursuant to *Terry*, *supra*. *See Mathis*, *supra* at *11 (collectively, nervous behavior, speech, and furtive movements suggesting a concealed weapon "justified . . . investigating further in order to ensure that the object was not a firearm."). Appellant's claim that the seizure was unjustified is unavailing.

Finally, we observe that Detective Brown's directive for Appellant to expose his hands was not tantamount to a search insofar as the detective did not frisk Appellant or order him to remove the items from his pocket. Accordingly, to the extent that Appellant voluntarily removed the heroin from his pocket in bringing his hands into view, the contraband was discovered in plain sight. Thus, inasmuch as the temporary detention was constitutional under *Terry*, no basis existed to suppress the physical evidence found in plain sight.

Judgment of sentence affirmed.

*(Footnote Continued)* ─────────

Appellant show his hands.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  12/12/2017